# UNITED STATES DISTRICT COURT
## DISTRICT OF MINNESOTA

| | |
|---|---|
| Mark C. Merry,<br><br>     Plaintiff,<br><br>v.<br><br>Prestige Capital Markets, Ltd., Prestige Capital Traders, LLP, Christopher Wilson, and Wilson, Haglund & Paulsen, PC,<br><br>     Defendants. | Case No. 12-cv-1608 (SRN/JJK)<br><br><br>**MEMORANDUM OPINION AND ORDER** |

Mark Eide, Mark Eide Law Group, 3147 Welcome Avenue North, Crystal, Minnesota 55422, for Plaintiff.

Dirk O. Julander, Julander Brown & Bollard, 9110 Irvine Center Drive, Irvine, California 92618, and Timothy P. Brausen, 8301 Virginia Circle North, St. Louis Park, Minnesota 55426, for Defendants.

SUSAN RICHARD NELSON, United States District Judge

This matter is before the Court on the Motion to Dismiss Plaintiff's Amended Complaint brought by Defendants Prestige Capital Markets, Ltd. ("Prestige BVI"), Prestige Capital Traders, LLP ("Prestige UK"), Christopher Wilson, and Wilson, Haglund & Paulsen, PC ("WHP") (collectively, Defendants). [Doc. No. 25.] For the reasons set forth below, the Court grants it in part and denies it in part.

## I.  BACKGROUND

Plaintiff Mark C. Merry is an investor who resides in Minnesota. (Am. Compl. ¶ 3 [Doc. No. 23].) Prestige BVI was formed on March 24, 2011, in the British Virgin Islands,

with its principal place of business in Irvine, California.  (Id. ¶ 4.)  Prestige BVI was

"established to offer an online foreign exchange trading platform to its customers."  (Id.)

Prestige UK was formed on April 12, 2011, as a wholly owned subsidiary of Prestige BVI

"maintaining a virtual registered office" in London, England.  (Id. ¶ 5.)

Around August 2011, a business colleague of Plaintiff, Daniel Werry, informed

Plaintiff about Prestige BVI.  (Id. ¶ 9.)  Plaintiff then participated in several conference calls

with Wilson, an attorney, organizer, director, and president of Prestige BVI, and Robert

Gray, a consultant for Prestige BVI.  (Id. ¶¶ 6, 9.)  Plaintiff alleges that during these

conversations, Wilson told him that: (1) "Gray had personally invested nearly $500,000 into

Prestige [BVI];" (2) "his investment money would be used specifically to expand operations

due to the large number of anticipated accounts;" and (3) "that many other investors were

already interested [in the company] and that money was expected within the next few days."

(Id. ¶ 9.)

Plaintiff alleges that Wilson created "offering documents for a private preferred

stock offering in the amount of $1,000,000," including a Private Placement Memorandum

("PPM").  (Id. ¶ 8.)  Wilson provided Plaintiff with a PPM dated September 15, 2011.  (Id. ¶

10.)[1]  Plaintiff contends that the PPM stated that Prestige BVI: (1) "has made significant

investments into infrastructure, software, liquidity partners and other essentials;" (2) "had

issued 850,000 common (ordinary) shares that were fully paid;" (3) "had an [sic] state-of-

---

[1]     Plaintiff incorrectly states in his Amended Complaint that he received the PPM on
"September 15, 2012."  (Am. Compl. ¶ 10 [Doc. No. 23].)  However, Plaintiff provided
the Court a copy of the PPM as an exhibit to his Motion to Amend, which shows the
correct date of September 15, 2011.  [Doc. No. 12-4.]

the-art, web-based foreign exchange trading platform with proprietary software that integrated two trading programs;" (4) "had a fully-staff [sic], multilingual operations department;" and (5) "an established customer base and developed network of referral relationships." (Id.)  In the Amended Complaint, Plaintiff alleges that in reliance on the statements made by Wilson and representations in the PPM, he purchased 20,000 shares of Prestige BVI preferred stock by executing a subscription agreement and questionnaire on September 27, 2011, in exchange for $100,000.  (Id. ¶ 11.)

Plaintiff alleges that, after purchasing the Prestige BVI preferred stock, he learned that Gray, in fact, never made a $500,000 contribution to Prestige BVI.  (Id. ¶ 12.)  Plaintiff also asserts that he learned that Prestige BVI "had not made any significant investments into infrastructure and technology."  (Id.)  In fact, Plaintiff maintains that Prestige BVI's only assets were approximately $75,000 that it borrowed.  (Id.)  Plaintiff also alleges that Prestige BVI "never raised any money other than Plaintiff's investment [and] that none of his investment was used for the benefit of operating [Prestige BVI]."  (Id. ¶ 13.)  Plaintiff asserts that he lost his entire investment of $100,000.  (Id. ¶ 14.)

On or around June 7, 2012, Plaintiff filed a complaint (the "Original Complaint") in Minnesota state court against Prestige BVI.  (Notice of Removal [Doc. No. 1].)  On July 3, 2012, Prestige BVI filed its answer and removed the action to this Court.  (Id.); (Answer [Doc. No. 2].)  On August 16, 2012, Plaintiff and Prestige BVI filed their Joint Rule 26(f) Report.  [Doc. No. 8.]  In the Rule 26(f) Report, Plaintiff proposed to amend the Original Complaint to include additional defendants.  (Id.)  On September 6, 2012, the Court issued a Pretrial Scheduling Order that stated that any motion to amend the pleadings or add parties

must be filed before October 1, 2012. [Doc. No. 10.] On October 10, 2012, Plaintiff and

Prestige BVI stipulated to the filing of an amended Complaint, [Doc. No. 21], which

Plaintiff filed with the Court on October 11, 2012 (the "Amended Complaint"). [Doc. No.

23.] Plaintiff's Amended Complaint brings the following causes of action against

Defendants: (1) violations of the Minnesota Securities Act of 2002; (2) Common Law

Fraud; (3) Breach of Fiduciary Duty; and (4) Legal Malpractice. (Id. ¶¶ 15–39.)

Defendants filed a Motion to Dismiss Plaintiff's Amended Complaint on October 24, 2012.

[Doc. No. 25.]

## II.    DISCUSSION

### A.    Standard of Review

Federal Rule of Civil Procedure 8 requires that a complaint present "a short and

plain statement of the claim showing that the pleader is entitled to relief." To meet this

standard, and survive a motion to dismiss under Rule 12(b)(6), "a complaint must contain

sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its

face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly,

550 U.S. 544, 570 (2007)). Although a complaint is not required to contain detailed

factual allegations, "[a] pleading that offers 'labels and conclusions' or 'a formulaic

recitation of the elements of a cause of action will not do.'" Iqbal, 556 U.S. at 678

(quoting Twombly, 550 U.S. at 555). The plausibility standard requires a plaintiff to

show at the pleading stage that success on the merits is more than a "sheer possibility."

Braden v. Wal-Mart Stores, Inc., 588 F.3d 585, 594 (8th Cir. 2009) (citation omitted). It

is not, however, a "probability requirement." Id. (citation omitted). Thus, "a well-

pleaded complaint may proceed even if it strikes a savvy judge that actual proof of those facts is improbable, and 'that a recovery is very remote and unlikely.'" Twombly, 550 U.S. at 556 (citation omitted).

"A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Iqbal, 556 U.S. at 678 (citing Twombly, 550 U.S. at 556).  Several principles guide courts in determining whether a complaint meets this standard.  First, the court must take the plaintiff's factual allegations as true and grant all reasonable inferences in favor of the plaintiff.  Crooks v. Lynch, 557 F.3d 846, 848 (8th Cir. 2009). This tenet does not apply, however, to legal conclusions or "formulaic recitation of the elements of a cause of action;" such allegations may properly be set aside.  Iqbal, 556 U.S. at 678 (quoting Twombly, 550 U.S. at 555).  In addition, some factual allegations may be so indeterminate that they require "further factual enhancement" in order to state a claim.  Id. (quoting Twombly, 550 U.S. at 557.)  Finally, the complaint "should be read as a whole, not parsed piece by piece to determine whether each allegation, in isolation, is plausible." Braden, 588 F.3d at 594.  Evaluation of a complaint upon a motion to dismiss is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." Iqbal, 556 U.S. at 679 (citation omitted).  A motion to dismiss a complaint should not be granted unless it appears beyond doubt that a plaintiff can prove no set of facts that would entitle him to relief.  Coleman v. Watt, 40 F.3d 255, 258 (8th Cir. 1994).

Certain claims that include allegations of fraud must be plead with particularity under Federal Rule of Civil Procedure Rule 9(b). The Eighth Circuit has held that claims subject to the particularity requirements must be plead to include "such matters as the time, place and contents of false representations, as well as the identity of the person making the misrepresentations and what was obtained or given up thereby." Parnes v. Gateway 2000, Inc., 122 F.3d 539, 549 (8th Cir. 1997) (citations omitted). "[C]onclusory allegations that a defendant's conduct was fraudulent and deceptive are not sufficient to satisfy the rule." Id. (citations omitted). As a general matter, the "who, what, when, where, and how" of any fraud claim must be pleaded in detail. Id. at 550 (citations omitted).[2]

## B.    Materials Considered

A court may consider the complaint, matters of public record, orders, materials embraced by the complaint, and exhibits attached to the complaint in deciding a motion to dismiss under Rule 12(b)(6). Porous Media Corp. v. Pall Corp., 186 F.3d 1077, 1079 (8th Cir. 1999). Both Plaintiff and Defendants have submitted voluminous extra-pleading materials and statements in their memoranda. Defendants' Memorandum includes nonpublic assertions not contained in Plaintiff's Amended Complaint. (See Defs.' Mem. in Supp. of Mot. to Dismiss at 2–5 [Doc. No. 27]); see also (Defs.' Reply

---

[2]    Plaintiff alleges that Defendants did not fulfill their meet and confer obligations under Local Rule 7.1 before filing this Motion to Dismiss. (Pl.'s Opp'n Mem. at 1–2 [Doc. No. 33].) The Court has reviewed the parties' arguments and finds that Defendants met their meet and confer obligations under Local Rule 7.1 before bringing this Motion to Dismiss.

Mem. at 1–2 [Doc. No. 34] (recognizing that Defendants' memorandum included information not contained in Plaintiff's Amended Complaint and stating that such information "is not relied upon by Defendants in their arguments in support of their Motion to Dismiss").) Similarly, Plaintiff's Memorandum refers to a number of exhibits that were not included in the Amended Complaint, but rather had been attached to Plaintiff's prior motion to amend the complaint, [Doc. Nos. 11–12], which was then withdrawn. (Pl.'s Opp'n Mem. at 9, 12–13, 15 [Doc. No. 33]) (citing Doc. Nos. 12-1, 12-2, 12-3 ). Additionally, Plaintiff filed a Supplemental Memorandum on April 16, 2013, citing a number of documents that were not referenced in his Amended Complaint. (Pl.'s Suppl. Mem. at 2–6 [Doc. No. 57].)

The Court will not consider materials submitted by the parties that are not embraced by the pleadings or incorporated into the Amended Complaint. See Piper Jaffray Cos., Inc. v. Nat'l Union Fire Ins. Co., 967 F. Supp. 1148, 1152 (D. Minn. 1997) (finding that at a motion to dismiss "the Court simply may not . . . resolve factual disputes on the basis of preemptive (and untested) submissions" and may only "consider extra-pleading material necessarily embraced by the pleadings . . . and all documents they incorporate by reference") (emphasis in original). Materials embraced by the Amended Complaint include the PPM, [Doc. No. 12-4], and the Subscription Agreement, [Doc. No. 12-8], which form the basis of the dispute and are referenced in the Amended Complaint. (See Am. Compl. ¶¶ 10–11 [Doc. No. 23]); (Defs.' Reply Mem. at 2–3 [Doc. No. 34]); see also Surgical Synergies, Inc. v. Genesee Assocs., 432 F.3d 870, 873 n.3 (8th Cir. 2005) (finding that a stock purchase agreement was properly considered on a motion to

dismiss because it was "embraced by the pleadings").[3]  The Court will not consider other

statements and documents referenced in the parties' briefing in the context of this Motion

to Dismiss.

### C.     The Minnesota Securities Act

Defendants move to dismiss Count I of Plaintiff's Amended Complaint, which

alleges violations of the Minnesota Securities Act of 2002 ("MSA").  Plaintiff does not

specify the provisions of the MSA under which he is asserting a violation, but it appears

that, at a minimum, he asserts a violation of Minn. Stat. § 80A.68.  (See Am. Compl. ¶¶

15–21 [Doc. No. 23].)  Minn. Stat. § 80A.68 makes it "unlawful for a person, in

connection with the offer, sale, or purchase of a security, directly or indirectly:"

> (1) to employ a device, scheme, or artifice to defraud;
>
> (2) to make an untrue statement of a material fact or to omit to state a
> material fact necessary in order to make a statement made, in the light of
> the circumstances under which it is made, not misleading; or
>
> (3) to engage in an act, practice, or course of business that operates or
> would operate as a fraud or deceit upon another person.

Minn. Stat. § 80A.68.  Although Plaintiff does not specify which subsection of Minn.

Stat. § 80A.68 he is suing under, it appears he is relying on Minn. Stat. § 80A.68(2).

(See Defs.' Mem. in Supp. of Mot. to Dismiss at 7 [Doc. No. 27] (noting that it appears

---

[3]      In supplemental letters to the Court, the parties dispute whether a March or
September 2011 version of the Memorandum and Articles of Association of Prestige BVI
was in effect when Plaintiff purchased shares of Prestige BVI.  (Defs.' Suppl. Lrt. At 2
[Doc. No. 42]); (Pl's Reply Suppl. Ltr. at 1–2 [Doc. No. 41]).  Because there are factual
issues regarding which version of the Memorandum and Articles of Association of
Prestige BVI was in effect when Plaintiff purchased shares of Prestige BVI, at this stage
the Court will not consider either version.

that Plaintiff is "relying on the second prong of Section 80A.68")); (cf. Pl.'s Opp'n Mem. at 8–17 (not disputing that his claim arises under Minn. Stat. § 80A.68(2)).

Minn. Stat. § 80A.68 has a complicated legislative history. The current MSA became effective August 1, 2007, but before 2007, a substantially similar action could be brought under Minn. Stat. § 80A.01. See Brent A. Olson, Introduction—Uniform Securities Act of 2002, 20A2 Minn. Prac., Business Law Deskbook § 27:1 (2012 ed.). Minn. Stat § 80A.01 was repealed in 2006 when Minnesota enacted the 2002 MSA. See id.

The MSA has been based on the Uniform Securities Act since its inception. See id. The 2002 MSA sought to incorporate with modifications the updated 2002 Uniform Securities Act. Id. The repealed Minn. Stat. § 80A.01 had been based on § 101 of the 1956 Uniform Securities Act. Compare Minn. Stat. § 80A.01 with Unif. Securities Act of 1956 § 101; see also Sprangers v. Interactive Techs., Inc., 394 N.W.2d 498, 503 (Minn. Ct. App. 1986) (stating that Minn. Stat. § 80A.01 "is nearly identical to section 101 of the [1956] Uniform Securities Act"). The 2002 statute, located at § 80A.68, is now based on § 501 of the 2002 Uniform Securities Act. Compare Minn. Stat. § 80A.68 with Unif. Securities Act of 2002 § 501. The parties do not dispute that case law discussing § 80A.01 is applicable to § 80A.68. (See Defs.' Mem. in Supp. of Mot. to Dismiss at 7 [Doc. No. 27] (noting that § 80A.01 was "repealed in 2006," but "is substantially similar to current Section 80A.68")); (Cf. Pl.'s Opp'n Mem. at 8–17 [Doc. No. 33] (not disputing that case law discussing § 80A.01 is applicable to § 80A.68)).

Therefore, the Court will look to case law analyzing both Minn. Stat. § 80A.01 and § 80A.68 when analyzing the viability of Plaintiff's claim.

Federal and Minnesota state courts have held that § 80A.01 (now § 80A.68) is the state analogue to federal Rule 10b-5[4] and therefore requires the same substantive elements of proof. See Sailors v. N. States Power Co., 4 F.3d 610, 614 n.5 (8th Cir. 1993) (noting that the plaintiff's claims under the MSA were bound by decisions on the federal claims); Erickson v. Horing, No. 99-cv-1468, 2001 WL 1640142, at *7 (D. Minn. 2001) (finding that the elements of a cause of action under Minn. Stat. § 80A.01 "are essentially the same as those of a fraud claim under 10b-5"); Minneapolis Emps. Ret. Fund v. Allison-Williams Co., 519 N.W.2d 176. 179–80 (Minn. 1994) (stating that Minn. Stat. § 80A.01 is "Minnesota's counterpart to federal Rule 10b-5" and should be interpreted consistently); see also Unif. Securities Act 2002 § 501 Off. Cmt. 1 ("Section 501, which was Section 101 in the 1956 Act, was modeled on Rule 10b-5 adopted under the Securities Exchange Act of 1934 and on Section 17(a) of the Securities Act of 1933).

---

[4]     17 C.F.R. § 240.10b-5 states:

It shall be unlawful for any person, directly or indirectly, by the use of any means or instrumentality of interstate commerce, or of the mails or of any facility of any national securities exchange, (a) To employ any device, scheme, or artifice to defraud, (b) To make any untrue statement of a material fact or to omit to state a material fact necessary in order to make the statements made, in the light of the circumstances under which they were made, not misleading, or (c) To engage in any act, practice, or course of business which operates or would operate as a fraud or deceit upon any person, in connection with the purchase or sale of any security.

At the pleading stage, a plaintiff asserting liability under Minn. Stat. § 80A.68(2) must allege: (1) a material misrepresentation or omission by the defendant; (2) negligence;[5] (3) a connection between the misrepresentation or omission and the purchase or sale of a security; (4) reliance upon the misrepresentation or omission; (5) economic loss; and (6) loss causation. See Minneapolis Firefighters' Relief Ass'n v. MEMC Elec. Materials, Inc., 641 F.3d 1023, 1028 (8th Cir. 2011) (quoting Stoneridge Inv. Partners, LLC v. Sci-Atl., Inc., 552 U.S. 148, 157 (2008)); Okla. Firefighters Pension & Ret. Sys. v. Capella Educ. Co., 873 F. Supp. 2d 1070, 1076 (D. Minn. 2012); Trooien, 608 F.3d at 1028; see also Olson, Securities Fraud Under Former Law—Essential Elements, supra, at § 27:52.[6]

Minn. Stat. § 80A.68 imposes a heightened pleading standard with respect to certain elements of proof. Specifically, a plaintiff must plead falsity with particularity. Capella Educ., 873 F. Supp. 2d at 1076 n.3 (citing Gebhardt v. ConAgra Foods, Inc., 335 F.3d 824, 830 n.3 (8th Cir. 2003)).[7] The heightened pleading standard does not apply to

---

[5] The Eighth Circuit has held that claims arising under Minn. Stat. § 80A.68(2) "require only a showing of negligence." Trooien v. Mansour, 608 F.3d 1020, 1028 (8th Cir. 2010).

[6] The Court also notes that the parties agree that, under Minn. Stat. § 80A.68, the Court is bound by the Supreme Court and Eighth Circuit decisions on Rule 10b-5. (See Defs.' Mem. in Supp. of Mot. to Dismiss at 7 [Doc. No. 27] ("Section 80A.68(2) is substantially similar to its federal counterpart in Rule 10b-5 promulgated under the Securities Exchange Act of 1934."); (Cf. Pl.'s Opp'n Mem. at 8–17 [Doc. No. 33] (citing cases analyzing Rule 10b-5); see also Sailors, 4 F.3d at 614 n.5 (applying federal law to a claim under the 1956 MSA because "the parties agree that we are bound by our decision on the federal claims") (citations omitted).

[7] The Minnesota Supreme Court has held that the negligent misrepresentation

the issues of materiality and loss causation.  <u>Capella Educ.</u>, 873 F. Supp. 2d at 1076 n.3.

In order to survive a motion to dismiss, a securities fraud complaint must point to

"contemporaneous reports, witness statements, or any [other] information that had

actually been provided to defendants" at the time they were alleged to have

misrepresented material facts.  <u>Elam v. Neidorff</u>, 544 F.3d 921, 927 (8th Cir. 2008).

Defendants first argue that the allegations against them under Minn. Stat.

§ 80A.68(2) are legally deficient under Rule 9(b) because they do not state to whom they

are directed.  (Defs.' Mem. in Supp. of Mot. to Dismiss at 7 [Doc. No. 27].)  The Court

agrees.  While Plaintiff mentions Wilson, in his capacity as an officer and director of

Prestige BVI, none of Plaintiff's allegations mentions any misrepresentations by Prestige

UK or WHP.  (<u>Cf.</u> Am. Compl. ¶¶15–21 [Doc. No. 23].)  It is also unclear whether

Plaintiff is asserting a claim against WHP for violations of the MSA.  In his opposition

memorandum, Plaintiff states that WHP "is not a defendant . . . other than the connection

to Count Four for malpractice" when discussing Count II (Common Law Fraud) and

Count III (Breach of Fiduciary Duty), but does not state whether WHP is a defendant for

Count I (2002 MSA).  (Pl.'s Opp'n Mem. at 17–18 [Doc. No. 33].)  Plaintiff's allegations

must specifically identify each defendant alleged to have engaged in fraudulent activity to

satisfy the pleading requirements of Rule 9(b).  Allegations that do not specify which

---

claims, which do not require a showing of scienter, nevertheless must be pled with
particularity.  <u>Hardin Cnty. Sav. Bank v. Hous. & Redev. Auth. of City of Brainerd</u>, 821
N.W.2d 184, 191 (Minn. 2012); <u>see also</u> <u>Trooien</u>, 2007 WL 436068, at *4 ("Although
[plaintiff's] negligent misrepresentation claim need not allege scienter, the Complaint
must nonetheless set forth particularized facts that explain why the information provided
by defendant was false.") (citation omitted).

Defendant violated the law are not sufficiently particular under the Rule. See Trooien, 2007 WL 436068, at *3 ("Allegations [under the 1956 MSA] that impute fraudulent activity collectively to 'defendants' are not sufficiently particularized under the Rule.").

Defendants also argue that Plaintiff's 2002 MSA claim is legally deficient under Rule 9(b) because it fails to allege misrepresentations with particularity. (Defs.' Mem. in Supp. of Mot. to Dismiss at 7–8 [Doc. No. 27]); (Defs.' Reply Mem. at 4–5 [Doc. No. 34].) The sum total of Plaintiff's allegations of 2002 MSA violations in the Amended Complaint are:

> In making the offer and sale to Plaintiff Merry, Defendant Wilson misrepresented the amount of money invested to establish [Prestige BVI] through common stock issuance; the significance of [Prestige BVI's] investment into infrastructure, technology, licensure, software, and employees; the capabilities of [Prestige BVI's] trading platform; and the establishment of a customer base and referral network.

(Am. Compl. ¶ 18 [Doc. No. 23].) Plaintiff's Amended Complaint fails to allege that Wilson's statements were false when made. Specifically, Plaintiff has not alleged facts showing that Wilson knew that his statements regarding the amount of common stock issuance or investment in infrastructure were false. Moreover, Plaintiff does not allege the "who, what, when, where, and how" regarding these statements. See Parnes, 122 F.3d at 549. In his memorandum, Plaintiff references exhibits outside the pleadings and makes statements not pled in the Amended Complaint to argue that he met the pleading requirement. The reliance on materials outside the pleadings highlights the deficiencies in Plaintiff's Amended Complaint. The allegations in Plaintiff's Amended Complaint are conclusory in nature and therefore fail to meet the requirements of Rule 9(b).

While the Court recognizes the difficulty in pleading securities fraud with particularity in the absence of pretrial discovery, conclusory allegations of securities fraud are insufficient under the Federal Rules. See Parnes, 122 F.3d at 550. Plaintiff's Complaint must set forth particularized allegations that Defendants' representations were false when made. See In re Buffets, Inc. Sec. Litig., 906 F. Supp. 1293, 1300 (D. Minn. 1995) (stating that Rule 9(b) requires a complaint to "set forth the facts explaining why it is claimed that the representations were known by each of the Defendants to be untrue or misleading when they were made."). Accordingly, the Court grants Defendants' Motion to Dismiss Count I of Plaintiff's Amended Complaint without prejudice. Within 30 days of the date of this Order, Plaintiff may file an amended complaint[8] which must comply with the requirements of Rule 9(b) as set forth above to be viable.[9]

---

[8]     In Plaintiff's Supplemental Memorandum, he requests that the Court allow him to file an amended complaint as well as add a claim for punitive damage and to amend the Pretrial Scheduling Order. (Pl.'s Suppl. Mem. at 1 [Doc. No. 57].) The Courts notes that Plaintiff's requests in his supplemental brief are procedurally improper under this Court's Local Rules. See D. Minn. L.R. 7.1 (requiring parties requesting relief to file motions with the Court and providing that nondispositive motions "must be heard by the magistrate judge"). By allowing Plaintiff to file an amended complaint, the Court is not ruling on Plaintiff's procedurally improper requests contained in his memorandum. If Plaintiff wishes to file a motion to amend to include a claim for punitive damages or alter the pretrial scheduling order, he must follow this District's Local Rules.

    Furthermore, in diversity actions such as this, the pleading of punitive damage claims must generally conform to the requirements of Minn. Stat. § 549.191. Ulrich v. City of Crosby, 848 F. Supp. 861, 866 (D. Minn. 1994); see also Bunker v. Meshbesher, 147 F.3d 691, 696 (8th Cir. 1998). Section 549.191 requires the court to perform a gatekeeping function to screen out "unmeritorious claims for punitive damages." Swanlund v. Shimano Indus. Corp., 459 N.W.2d 151, 154 (Minn. Ct. App. 1990). Specifically, the gatekeeping statute provides that the plaintiff may not seek punitive damages at the outset of a civil action. Id. Instead, the plaintiff must make a motion to amend the pleadings to claim punitive damages and support that motion with affidavits

### D.    Fraudulent Misrepresentation

Defendants move to dismiss Count II of Plaintiff's Amended Complaint alleging fraudulent misrepresentation.  Plaintiff concedes that the Court should dismiss Count II against WHP, and therefore, the sole issue is whether Plaintiff states a fraudulent misrepresentation claim against Prestige BVI, Prestige UK, and Wilson.  (Pl.'s Opp'n Mem. at 17 [Doc. No. 33].)  To succeed in a fraudulent misrepresentation claim under Minnesota law, a plaintiff must prove:

> (1) there was a false representation by a party of a past or existing material fact susceptible of knowledge; (2) made with knowledge of the falsity of the representation or made as of the party's own knowledge without knowing whether it was true or false; (3) with the intention to induce another to act in reliance thereon; (4) that the representation caused the other party to act in reliance thereon; and (5) that the party suffer[ed] pecuniary damage as a result of the reliance.

---

showing the factual basis for the claim.  Id.  The Court must give the plaintiff leave to add a claim for punitive damages if it finds that the plaintiff provides prima facie evidence in support of the motion.  Id.

[9]    Defendants also argue that the Court should grant the Motion to Dismiss Plaintiff's Amended Complaint because Plaintiff has not adequately pled loss causation. (Defs.' Mem. in Supp. of Mot. to Dismiss at 7–9 [Doc. No. 27].)  Defendants assert that Plaintiff's loss did not occur when he purchased securities in 2011, but rather more than six months later when Gray died in March 2012.  (Id. at 8.)  Defendants contend that when Gray died, Prestige BVI was forced to cease operations because he was "the critical principle of the business."  (Id. at 9) (emphasis in original).  Moreover, Defendants assert that the PPM warned Plaintiff that Gray's loss would have a negative impact on the company.  (Id.)  Plaintiff responds that facts surrounding Gray's death and the impact on Prestige BVI rely on evidence not contained in the Amended Complaint and therefore the Court cannot properly consider it on a motion to dismiss.  (Pl.'s Opp'n Mem. at 6 [Doc. No. 33].)  The Court agrees that facts regarding Gray's death are improper for the Court to consider at this stage.  The Court notes, however, that while it is allowing Plaintiff to file an amended complaint, the Court is not assessing the merits of Plaintiff's claims at this time.

Hoyt Props., Inc. v. Prod. Res. Group, LLC, 736 N.W.2d 313, 318 (Minn. 2007).  Under

Minnesota law, any allegation of misrepresentation is considered an allegation of fraud

that must be pled with particularity.  Juster Steel v. Carlson Cos., 366 N.W.2d 616, 618

(Minn. Ct. App. 1985); see also Trooien, 2007 WL 436068, at *3 (stating that

"[f]raudulent misrepresentation claims are subject to the particularity requirements of

Rule 9(b)").  Plaintiff does not dispute that his fraudulent misrepresentation claim is

subject to the pleading requirements of Rule 9(b).

        The Court finds that Plaintiff's common law fraud claim fails to plead fraud with

particularity for the same reasons as his 2002 MSA claim.  See Trooien, 2007 WL

436068, at *4 (finding that the plaintiff's common law fraud claim fails to plead fraud

with particularity for the same reasons as his 1956 MSA claim).  As discussed above,

Plaintiff's allegations must identify with particularity each defendant alleged to have

engaged in fraudulent activity to satisfy the requirements of Rule 9(b).  Plaintiff must

also set forth particularized facts that explain why the information provided by

Defendants was false.  As such, the Court grants Defendants' Motion to Dismiss

Plaintiff's fraudulent misrepresentation claim without prejudice.  Plaintiff may file an

amended complaint to comply with Rule 9(b) within 30 days of the date of this Order.

### E.    Breach of Fiduciary Duty

        Defendants Prestige BVI, Prestige UK, and WHP move to dismiss Count III of

Plaintiff's Amended Complaint alleging breach of fiduciary duty.  Plaintiff concedes that

Prestige BVI, Prestige UK, and WHP did not owe such a duty to Plaintiff.  (Pl.'s Opp'n

Mem at 18 [Doc. No. 33].)  Therefore, the Court grants Defendants Prestige BVI,

Prestige UK, and WHP's Motion to Dismiss Count III of Plaintiff's Amended Complaint with prejudice. The Court notes that the parties do not dispute that Plaintiff's breach of fiduciary duty claim survives as to Wilson.[10]

### F. Attorney Malpractice

Defendants Wilson and WHP move to dismiss Count IV of Plaintiff's Amended Complaint alleging attorney malpractice.

### 1. Choice of Law

The parties dispute whether California or Minnesota law applies to Plaintiff's allegations of attorney malpractice. The Court applies the choice-of-law principles of Minnesota to determine which substantive law to apply. See Heating & Air Specialists, Inc. v. Jones, 180 F.3d 923, 928 (8th Cir. 1999) (stating that federal district courts apply the choice-of-law provisions of the state in which they sit in diversity cases). Defendants argue that the substantive laws of California should apply because Wilson and WHP are licensed to practice law only in California, the engagement by Prestige BVI occurred in California, Prestige BVI was headquartered in California, and "all of the conduct alleged

---

[10] In Plaintiff's Motion to Disqualify Counsel, he argues for the first time that his claim for breach of fiduciary duty is in the nature of a shareholder derivative action. (Pl.'s Mem. in Supp. of Mot. to Disqualify at 4 [Doc. No. 47] (stating that "the breach of fiduciary duty count and fraud counts in this matter are shareholder derivative actions").) Because this claim was not addressed in the parties' briefing or at the hearing before the Court on Defendants' Motion to Dismiss, the Court allowed each party to file supplemental briefs on Plaintiff's shareholder derivative allegations. Plaintiff's Supplemental Memorandum withdrew his shareholder derivative allegations against Defendants. (Pl.'s Suppl. Mem. at 1 [Doc. No. 57].) As such, the Court grants Defendants' Motion to Dismiss Plaintiff's shareholder derivative allegations with prejudice.

here occurred in California." (Defs.' Mem. in Supp. of Mot. to Dismiss at 12 n.2 [Doc.

No. 27].) Plaintiff contends that the Court should apply the substantive laws of

Minnesota because Defendants have not provided any "analysis of whether: (i) a conflict

exists [between California and Minnesota law], (ii) such issue is substantive, or (iii)

California and Minnesota law can be collectively applied." (Pl.'s Opp'n Mem. at 7–8

[Doc. No. 33].)

The Court need not decide which state's law to apply because the Court finds that

Defendants would prevail under the laws of either state. See, e.g., Cotton v. Commodore

Exp., Inc., 459 F.3d 862, 864 (8th Cir. 2006) (holding that the court was not required to

perform a choice-of-law analysis because the appellees would prevail under the laws of

either state alleged to apply); Leonards v. S. Farm Bureau Cas. Ins. Co., 279 F.3d 611,

612 (8th Cir. 2002) (finding it unnecessary to resolve a choice-of-law conflict when the

relevant legal principles were the same in both states at issue); see also (Defs.' Mem. in

Supp. of Mot. to Dismiss at 12 n.2 [Doc. No. 27] (stating that Minnesota and California

attorney malpractice law "is substantially the same on all relevant matters"). Because

Plaintiff contends that Minnesota law is more favorable to him, and Defendants believe

that Minnesota law is substantially the same as California law on this issue, the Court

assumes that Minnesota law applies for the purposes of this Order.

## 2. Analysis

To prove malpractice, a plaintiff must establish: (1) that an attorney-client

relationship existed; (2) that the attorney acted negligently; and (3) that the negligence

proximately caused the damage to plaintiff. Togstad v. Vesely, Otto, Miller & Keefe,

291 N.W.2d 686, 692 (Minn. 1980) (per curiam).  The general rule in legal malpractice in Minnesota is that, in the absence of fraud or another improper motive, an attorney is liable for professional negligence only to a person with whom he has an attorney-client relationship.  Marker v. Greenberg, 313 N.W.2d 4, 5 (Minn. 1981).  "If an attorney were to owe a duty to a nonclient, it could result in potential ethical conflicts for the attorney and compromise the attorney-client relationship, with its attendant duties of confidentiality, loyalty, and care."  McIntosh Cnty. Bank v. Dorsey & Whitney, LLP, 745 N.W.2d 538, 545 (Minn. 2008).  In L & H Airco v. Rapistan Corp., the Minnesota Supreme Court held that absent extraordinary and extreme circumstances involving actual fraud, an attorney may not be held liable in damages to his party-opponent.  446 N.W.2d 372, 380 (Minn. 1989).  The court stated that such liability "would undermine the attorney's duty to zealously represent the client and resolve all doubts in favor of the client."  Id. at 379.  "It would also undermine the trust between the attorney and client, which is an essential element of the relationship."  Id.

While there are exceptions where strict privity is not required for a third party to sue a lawyer for negligence, "[t]he cases extending the attorney's duty to non-clients are limited to a narrow range of factual situations in which the client's sole purpose in retaining an attorney is to benefit directly some third party."  Marker, 313 N.W.2d at 5 (adopting balancing test from the California case of Lucas v. Hamm, 364 P.2d 685, 687 (Cal. 1961)).  "[T]he benefit to the third party must be 'the end and aim of the transaction' before the beneficiary may be called direct."  McIntosh Cnty. Bank, 745 N.W.2d at 547; see also Marker, 313 N.W.2d at 5 (to determine if person was third-party

beneficiary, court examines factors such as extent to which transaction was intended to affect third party and foreseeability of harm to third party); Schuler v. Meschke, 435 N.W.2d 156, 163 (Minn. Ct. App. 1989) (cooperative members could not sue cooperative's attorney on grounds that they might have been intended beneficiaries of attorney's work).  In addition, "the attorney must be aware of the client's intent to benefit the third party in order for the [third party beneficiary] exception to be applicable." McIntosh Cnty. Bank, 745 N.W.2d at 548.  Thus, where an attorney engages in conduct during the course of a representation such that an adverse party is not the intended beneficiary of the attorney's services, that party cannot bring action against the attorney for malpractice.  Id. at 548.

Here, Plaintiff admits that Wilson and WHP were representing Prestige BVI and does not allege that Wilson or WHP were his attorney.  (Am. Compl. ¶ 6 [Doc. No. 23] ("Defendant Christopher A. Wilson acted in the combined roles of attorney . . . to Prestige").  Additionally, Plaintiff has not pled that he was a direct or intended beneficiary of Wilson and WHP's relationship with Prestige BVI.  (Cf. id. ¶¶ 34–39.) Nor could he as he was an adverse party to Prestige BVI—he was participating in negotiations to purchase stock in the company.  The legal services Wilson and WHP provided for Prestige BVI was intended to benefit the company, not the investors.  See TJD Dissolution Corp, 460 N.W.2d at 62 (finding it unreasonable for a non-client shareholder to rely on advice from an attorney whom he knew represented a corporation with adverse interests).  Taking the allegations in the Amended Complaint in the light most favorable to the Plaintiff, Plaintiff has not sufficiently alleged that he was a direct or

intended beneficiary of Wilson and WHP's relationship with Prestige BVI.[11]  Therefore, the Court grants Defendants' Motion to Dismiss Count IV of Plaintiff's Amended Complaint with prejudice.

## III.    ORDER

Based on the foregoing, and all the files, records, and proceedings herein, **IT IS HEREBY ORDERED THAT** Defendants' Motion to Dismiss Plaintiff's Amended Complaint is **GRANTED IN PART AND DENIED IN PART** consistent with this Order:

1.  Defendants' Motion to Dismiss Count I of Plaintiff's Amended Complaint alleging violations of the 2002 MSA is **GRANTED WITHOUT PREJUDICE**.

2.  Defendants' Motion to Dismiss Count II of Plaintiff's Amended Complaint alleging common law fraud is **GRANTED WITHOUT PREJUDICE**.

3.  Defendants' Motion to Dismiss Count III of Plaintiff's Amended Complaint alleging breach of fiduciary duty against Prestige BVI, Prestige UK, and WHP is **GRANTED WITH PREJUDICE**.

4.  Defendants' Motion to Dismiss Plaintiff's shareholder derivative allegations against Defendants is **GRANTED WITH PREJUDICE**.

5.  Defendants' Motion to Dismiss Count IV of Plaintiff's Amended Complaint alleging legal malpractice is **GRANTED WITH PREJUDICE**.

---

[11]    The Court notes that it need not address the factors discussed in <u>Lucas</u> because Plaintiff has failed to demonstrate the threshold requirement that he was a direct or intended beneficiary of Wilson and WHP's work done on behalf of Prestige BVI.  <u>See</u> <u>McIntosh Cnty. Bank</u>, 745 N.W.2d at 548–49 ("Because the respondents are not direct and intended beneficiaries, we do not reach the <u>Lucas</u> factors.").

**IT IS FURTHER HEREBY ORDERED** that Plaintiff shall have 30 days from the date of this Order to file an amended complaint.


Dated: May 7, 2013                                    s/Susan Richard Nelson
                                                       SUSAN RICHARD NELSON
                                                       United States District Judge